CONNERS BROTHERS COMPANY *vs.* JENNIE E. SULLIVAN & others.

Middlesex.    December 1, 1914. — April 2, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Bills and Notes*, Accommodation indorser. *Contract*, Agreement in writing. *Evidence*, Presumptions and burden of proof, Competency, Admissions and confessions. *Practice, Civil*, Exceptions, Judge's charge. *Witness*, Impeachment. *Estoppel.*

If, at the request of a lender of money and wholly for his convenience and accommodation, a person consents to have the title to certain promissory notes and mortgages securing them pass through him as a conduit with the understanding and agreement that he shall incur no personal liability, and if in pursuance of this agreement the notes and mortgages are made to him and he indorses the notes to the lender and transfers the mortgages to him, the lender cannot recover in an action against him as indorser, because in such an action brought by the party accommodated the indorser is free to show the facts in defence.

In such an action, where the facts are in dispute, the burden is on the plaintiff to prove that the defendant received a consideration for his indorsement of the notes.

It is settled that no exception to a portion of the charge of a presiding judge will be sustained where the charge as a whole sufficiently states the law applicable to the issues tried between the parties and where, as in the present case, the failure of the jury to adopt the view of the excepting party cannot be attributed to any fault of the judge and is not an error of law.

In an action on certain promissory notes against an indorser, whose defence is that he indorsed the notes without consideration at the request and for the accommodation of the plaintiff, where the defendant, testifying as a witness, has admitted on his cross-examination that before he brought a certain action against the plaintiff on an independent demand he had claimed the right to set off that demand against his liability on the notes on which he now is sued, not then setting up his present defence on the notes, the record of a judgment against the witness in the action referred to is not admissible to impeach his credibility, because that judgment settled only the controversy then on trial, and does not affect the present issue either by estoppel or as an admission.

CONTRACT by a corporation having its usual place of business at Lowell against Jennie E. Sullivan and G. Cleveland Sullivan as the joint makers of thirty-four promissory notes and against John J. Gray as the indorser of these notes. Writ dated June 7, 1911.

In the Superior Court the case was tried before *Pratt*, J. The defendants Sullivan were defaulted and the trial proceeded against the defendant Gray as· indorser. The substance of the evidence

·is described in the opinion. Thirteen of the notes in suit were dated May 1, 1908, and became payable at various times thereafter, and the remaining twenty-one notes were dated November 5, 1908, and became payable at various times thereafter. Each series of notes was given in payment for a lot of horses, wagons, harnesses and other teaming equipment sold by the plaintiff at times corresponding respectively to the dates of the series of notes. All the notes were payable to the defendant Gray and were indorsed by him in blank, waiving demand and notice. Each set of notes was secured by a mortgage on the personal property sold at the time the notes were given, which mortgage in each instance ran from the Sullivans jointly to Gray and was assigned by Gray to the plaintiff. No question was raised as to the execution of the notes and their indorsement and delivery by the defendant to the plaintiff, or as to the amount remaining unpaid thereon.

Gray's defence at the trial was based entirely upon an alleged lack of consideration for his indorsements. He relied on the alleged facts and arguments, that the notes and mortgages were made out by the plaintiff's attorney and were signed by the makers, the defendants Sullivan, and that subsequently the defendant Gray was requested to come to the office of the plaintiff's attorney to execute the assignment of the mortgages and to indorse the notes to the plaintiff; that the defendant Gray never owned the property nor had any interest in it, and that there was no contention that Gray gave anything to the defendants Sullivan or either of them for this transfer, or that the plaintiff gave any consideration to Gray for his transfer and indorsement at the time or sustained any loss or detriment thereby or that Gray was under any obligation to the plaintiff; that the plaintiff was not a holder of the notes in due course, because the plaintiff knew and had notice that the defendant Gray had no right, title or interest in the notes or property; that Gray never had possession of the notes and could not have completed their negotiation by delivery; that he simply acted as a conduit and that the indorsement was in effect a qualified indorsement resorted to by the plaintiff to indicate of record a transaction between the defendants Sullivan and Gray instead of a transaction between the plaintiff and the defendants Sullivan.

The defendant Gray testified as a witness on his own behalf. On his cross-examination by the plaintiff he testified that in August, 1909, he brought a bill in equity against the Conners Brothers Company and that he signed this bill in equity and made oath to it. Then followed the following questions and answers: "Q. Then your claim at that time, with reference to these notes, was that you were liable on these notes, but that you were going to set off against that liability another sum that they owed you? A. I never claimed to be liable on those notes. I signed that bill in equity with that in it. Q. Why didn't you say, in this bill in equity, that you never intended to be liable on these notes, and that they were only given to accommodate Conners? A. I probably omitted it. We are all liable to err, you know. Q. That didn't occur to you? A. As I say, we are all liable to mistakes." The defendant Gray further testified that he also brought against the Conners Brothers Company an action at law which is described briefly in the opinion. Later in the cross-examination the plaintiff offered in evidence certified copies of the record in this action at law, offering to show that the action in question "was that referred to by the witness Gray in his evidence and the suit in which he sought to recover from the Conners Brothers Company the money that he claimed they owed him and that he had previously claimed should be set off against the notes in suit in this case, and in which case the plaintiff offered to show that final judgment had been rendered for the defendant. The defendant objected to the introduction of the record, on the ground that it was immaterial in this case." The judge excluded the record, and the plaintiff excepted.

At the close of the evidence the plaintiff asked the judge to make the following rulings:

"1. On all the evidence the plaintiff is entitled to recover."

"3. If the jury find that there was a consideration for the notes, then their verdict should be for the plaintiff for the sum agreed upon.

"4. Oral evidence cannot be considered by the jury as tending to vary or contradict the legal effect of Gray's indorsement, but is to be considered only in so far as it bears on the question of consideration.

"5. The notes, mortgages and assignments made respectively

in May and November, 1908, were parts of the same two transactions, and it makes no difference on the question of consideration whether Gray or Sullivan got the property, as a consideration moving to either would support the obligation of the other."

The judge refused to make any of these rulings except so far as their substance might be embodied in his charge. The judge concluded his charge as follows:

"If you are satisfied upon all the evidence that Mr. Gray received some beneficial interest in this teaming property and the teaming business in consideration for his signatures to these notes, then your verdict should be for the plaintiff, and your verdict, it is agreed, in that case, should be for the amount of $2,563.20, plus simple interest reckoned at the rate of six per cent per annum from the date of the writ, which was June 7, 1911, up to to-day, assuming of course that you reach your verdict to-day.

"Unless you are satisfied by a fair preponderance of the evidence that Mr. Gray did receive such a beneficial interest in that business in consideration of his affixing his signatures to these notes, your verdict should be for the defendant."

The plaintiff excepted to "so much of the foregoing charge as failed to make clear to the jury that a valid consideration may have existed which would bind Gray on these notes without the transfer of any property at all to Gray or of any beneficial interest at all in any property to Gray, because it makes no difference whether Gray got any property or whether he got any beneficial interest, if the transaction was done at his request."

The plaintiff further excepted "to any statement contained in the charge to the effect that the Sullivans never promised to pay Gray anything, to the statement contained in the charge that the papers themselves throw no light on the nature of the transaction, and further to the statement that the papers do not state the real transaction."

After a colloquy at the end of the charge, the judge further instructed the jury as follows:

"The plaintiff requests that I should give you the following ruling: If the jury find that it was agreed among Conners and the Sullivans and Gray that either Sullivan or Gray or both of them should get title to the property in consideration of signing and delivering the mortgage and notes, and that either or both of

them did in fact get title to the property, then the jury should find for the plaintiff for the sum agreed upon.

"That I give you, and I call your attention to the fact that it assumes that you must find an agreement to that effect between the Conners Company, the Sullivans and Gray. If you find such an agreement, that either Gray or the Sullivans should get title to the property, you would be warranted in finding a verdict for the plaintiff.

"The plaintiff must satisfy the jury that there was a valid and good consideration between the plaintiff and this defendant for the indorsement on the notes. If Gray's indorsement was given merely for the accommodation of the plaintiff the jury must find for the defendant."

The jury returned a verdict for the defendant Gray; and the plaintiff alleged exceptions.

The case was argued at the bar in December, 1914, before *Rugg,* C. J., *Braley, Sheldon, De Courcy, & Crosby,* JJ., and afterwards was submitted on briefs to all the justices constituting the court.

*S. E. Qua,* for the plaintiff.

*J. Burke,* for the defendant Gray.

BRALEY, J.   The makers and indorser of the notes having been joined as defendants, it is conceded that as to the makers, who have been defaulted, the plaintiff is a holder for value; and it would not avail the indorser who alone defends, that with the plaintiff's knowledge he became bound for their accommodation. R. L. c. 73, § 46.   *Neal* v. *Wilson,* 213 Mass. 336, 337, and cases cited.

While it was unquestioned that, with the accompanying mortgages, the notes were taken by the plaintiff in payment for the transfer of certain personal property to the makers and mortgagors, the evidence as to their business relations and dealings with the indorser, hereinafter referred to as the defendant, both before and after the transactions, is irreconcilable. The testimony of the plaintiff's president and of its counsel, who prepared the papers and at whose office they were executed, tended to show that the defendant had in some form a pecuniary interest in the property or that the property had been transferred to the makers at the defendant's request and he had indorsed to secure the trans-

fer. The jury, if they believed this evidence, would have been warranted in finding a valuable consideration, sufficient to support the defendant's promise. *Hubbard* v. *Coolidge,* 1 Met. 84. *Warren* v. *Durfee,* 126 Mass. 338.

But the defendant testified that at the solicitation of the plaintiff's president, and wholly for its convenience and accommodation, he consented to the use of his name as a mere conduit to pass title to the plaintiff of the notes as well as to the property named in the mortgages, with the distinct understanding and agreement that he should incur no personal liability.

"As to third parties, the rights and liabilities of an accommodation party are, in general, the same as those of a party receiving valuable consideration for his signature; but between the accommodation party and the person accommodated there is no such liability, and one who draws or indorses commercial paper for the accommodation of another is not liable on it to him, whatever their apparent relation upon the paper may be." 3 R. C. L. § 336, and cases cited. *Bird* v. *Daggett,* 97 Mass. 494.

The credibility of the witnesses was for the jury. If they believed the defendant's evidence, or if they found the evidence evenly balanced, there was no consideration shown for his promise and he was entitled to a verdict. *Lockwood* v. *Twitchell,* 146 Mass. 623. *Warren* v. *Durfee,* 126 Mass. 338, 341. *Corliss* v. *Howe,* 11 Gray, 125.

The plaintiff's first, third and fourth requests could not have been given as formulated. The jury were to determine the actual transaction and a verdict for the plaintiff could not have been ordered. The validity of the notes as enforceable contracts against the defendant depended upon proof of a valuable consideration, the absence of which could be shown by parol evidence, with the burden of proof upon the plaintiff to satisfy the jury that the defendant could be held. *Hill* v. *Whidden,* 158 Mass. 267. *Delano* v. *Bartlett,* 6 Cush. 364. The first clause of the fifth request, that the notes, mortgages and assignments were part of the same transaction, is sufficiently covered by the instructions; and the remainder of the request, that a consideration moving either to the makers or to the indorser would support the obligation of each, rests upon the plaintiff's theory that the defendant was liable because at his request the plaintiff had transferred title to the

horses and wagons, as the parties understood, to the makers and the defendant, even if the defendant's name did not appear in the bill of sale, or that he had indorsed for their benefit. It could not have been given without directing the attention of the jury to this qualification, and the judge carefully and accurately pointed out the distinction.

The exception taken at the close to so much of the charge as failed to make clear to the jury that a valid consideration may have existed, which would bind the indorser without the transfer of any property or of any beneficial interest in property to him, "because it makes no difference whether Gray got any property or . . . any beneficial interest, if the transaction was done at his request," was not well taken. The charge repeatedly directed the attention of the jury to the respective claims of the parties. They were told plainly that, if the defendant indorsed at the makers' request, he was liable as well as if the plaintiff transferred the property to the makers at his request, or he had a beneficial interest in the property, and what the plaintiff must prove to hold the defendant on his indorsement was defined with sufficient accuracy. See *Arlington National Bank* v. *Bennett*, 214 Mass. 352, 357; *Doe* v. *Boston & Worcester Street Railway*, 195 Mass. 168, 172.

The next exception is to certain statements of the judge that the makers never promised to pay the defendant anything, and that the papers themselves threw no light on the questions the jury were to pass upon, or stated the real transaction. It was unquestioned that on the face of the notes the defendant had no defence. But the case was tried, from beginning to end, upon a question of fact, dependent upon extrinsic evidence, whether the contract between the defendant, the makers and the plaintiff was as the plaintiff contended, or whether the defendant acted only at the request and for the benefit of the plaintiff. The nature of the transactions, to which the judge referred and which he directed the jury to consider, as shown by the context, were the questions raised by their respective contentions.

The further request, apparently proffered after the foregoing exceptions had been alleged, rests upon the assumption that there was a mutual agreement and understanding between the makers and the defendant that the makers should take title to the prop-

erty for the benefit of themselves and of the defendant. Although accurate as a statement of the plaintiff's contention, which already had been given, it ignored the defence and the adverse conclusion which the jury might find on all the evidence. The language used by the judge, after reading the request and saying that he gave it, did no more than again to recall to the jury the real question which they must decide, and he repeated that the burden rested upon the plaintiff to satisfy them that its contention as to the consideration was true, but if the indorsement was merely for the plaintiff's accommodation, they must find for the defendant. *Morrison* v. *Holder,* 214 Mass. 366.

It is settled that portions of a charge cannot be separated and excepted to, where the charge as a whole, as in the present case, sufficiently states the law applicable to the issues which the parties actually tried. *Sayles* v. *Quinn,* 196 Mass. 492, 496. The failure of the jury to adopt the plaintiff's view cannot be attributed to any fault of the judge and is not an error of law.

A single exception remains to the exclusion of evidence. To impeach the credibility of the defendant as a witness the plaintiff properly was allowed to introduce in evidence the contradictory statements made by him in the bill in equity, to which he had affixed his signature and made oath. *DeMontague* v. *Bacharach,* 187 Mass. 128. But the record of the judgment in the action at law was inadmissible. The defendant's liability on the notes was not in issue in that case. It was an action to recover a debt alleged to be due from the plaintiff, and in reply to questions of counsel in cross-examination the defendant admitted he had claimed before the action was brought that the debt should be set off against the notes. The plaintiff had the full benefit of this and could ask the jury to draw the inference that the claim of set-off was an admission that he was liable on the notes. The judgment in favor of the defendant which followed the verdict only settled the question there tried. It could not affect the issue in the case at bar, either by estoppel or as an admission. *Maguire* v. *Pan-American Amusement Co.* 211 Mass. 22, 25, 26.

The plaintiff having failed to show affirmatively any reversible error, the exceptions, in the opinion of a majority of the court, must be overruled.

*So ordered.*